UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS GOODELL, JR.,
MELISSA GOODELL,

        Plaintiffs,                             Case No. 12-12979
                                                             Honorable Thomas L. Ludington

v.

CITIMORTGAGE, INC.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART, DENYING IN PART
DEFENDANT'S MOTION *IN LIMINE***

Thomas and Melissa Goodell believe that CitiMortgage, Inc. (CMI) acted unlawfully when it foreclosed on their home mortgage. They filed a complaint on July 6, 2012, and the case has made its way through discovery since that time. Trial is set to commence on July 30, 2013. On June 18, 2013, CMI filed a motion *in limine* to preclude various categories of evidence from the trial. Based on what follows, CMI's motion will be granted in part and denied in part.

**I**

According to the Goodells' complaint,[1] in 1995 they purchased the residence located at 2134 Linda Street in Saginaw, Michigan. After the purchase, CMI acquired an interest in the home mortgage. Then, in the fall of 2010, Thomas went off of work for surgery and remained off work for approximately three months. Because of these events, the Goodells allege, they fell behind in their mortgage payments.

---

[1] As there has been no factual development of the case through dispositive motions, this factual background section is based primarily on the Goodells' complaint and the attached exhibits. *See* Pls.' Compl., ECF No. 1.

Once they fell behind, Melissa contacted CMI to discuss the available options. The Goodells allege that in the spring of 2011, a CMI "representative instructed [Melissa] that if she would pay three hundred dollars ($300.00) per week [the Goodells] would become current on [their] mortgage." Pls.' Compl. ¶ 11. The Goodells subsequently "arranged to have the three hundred dollars ($300.00) per week automatically transferred from a checking account." *Id*. at ¶12.

In the summer of 2011, the Goodells noticed that CMI had stopped accepting the automatic transfers from their checking account. When Melissa contacted CMI, she was informed that she and Thomas "had gone ninety (90) days past due on the mortgage and that [CMI] intended on starting foreclosure proceedings." *Id*. at ¶ 15.

At some point in the ensuing months, CMI "through its representative, Sherelle Keeling, informed [the Goodells] of the paperwork necessary to begin negotiating a modification of the mortgage loan[.]" *Id*. at ¶ 18. So on September 15, 2011, Melissa informed Ms. Keeling "that she was in the process of obtaining the information requested[.]" *Id*. The Goodells allege that Melissa submitted the requested paperwork "at the end of the week of September 27, 2011," *id*. at ¶ 19 (although the email they cite in support indicates only that Melissa *would* be sending in the requested information, not that she already had).

On October 11, 2011, Ms. Keeling sent the following email to the Goodells:

> I have attempted to call you but I get no answer, I have good news!!!! Your Modification has been approved as of 10/10/11, being that it was just approved yesterday, the new terms has [sic] not been written up as of yet, so that's what I am waiting on, you may even get the approval letter in the mail with the terms before I can actually see them. So keep an eye out and keep in contact with me to find out the new terms. thanks.

*Id*. at ¶ 22 (citation omitted).

Despite this email, on or around October 24, 2011, the Goodells received a letter "stating that they had not been approved for remodification." *Id*. at ¶ 29. So Melissa wrote the following email:

> Dear Sherelle: I just received a letter stating that I have not been approved for a remodification of our loan. First you told me I was approved for the remodification and I would be receiving my new terms in the mail (and I have that e-mail from you to prove it) and now you say I am not. I have been asking you for at least a week now, how much money I am actually past due so I can pay it, yet you still have not given me that number or for that matter, even acknowledged my e-mails. I do not appreciate the fact that I have been misled by the false statements that you have been making. Please send me the name, telephone number and e-mail address of your immediate supervisor upon receipt of this e-mail.

*Id*. at ¶ 30 (citation omitted).

Ms. Keeling responded the same day, "If you would like to speak to my supervisor call in and request to speak with David shew in regards to Sherelle keeling. thanks. have a good day!" Pls.' Compl. Ex. B, at 34. Seven minutes later, she also wrote,

> also you received a letter for the decline of the HAMP program but again and as I stated before you have been APPROVED for the supplemental mod. Your acct is in foreclosure, we CANNOT take any money from you. at this point you can communicate with my manager who is David Shew. thanks.

*Id*. at 35.

Around 1:00 p.m. on October 24, Melissa wrote this email to Ms. Keeling:

> Sherelle- I don't doubt that you do this everyday. All I am trying to do is pay what I owe (a number which I still don't have). I am frustrated because when I originally called in the Spring, I was told to pay $300 per week to catch up (that number was given to me by one of your employees in collections), I now know that number was not enough to catch me up fast enough, so I supply all the paper work you asked for- still send money like I was asked, was approved for the remodification, and then wasn't approved for the remodification. Now I am supposed to call David Shew, whom I tried calling with no luck. All I want to know is how much money I have to send to make the foreclosure stop and to get things back where they were. I feel like I am doing everything I am supposed to, but to no avail. Do you have a direct number for David Shew, the first two times I called I was hung up on. After my third call, I was on hold for 14 minutes to find out that I couldn't speak with him. Thanks.

*Id*. at 40.  Ms. Keeling responded that "David is out at lunch" and asked when she could contact Melissa by phone.  *Id*. at 43.  Melissa provided her number, and indicated she was available until 5:00 p.m.  *Id*. at 46.

On November 8, 2011, Melissa again emailed Ms. Keeling.  She wrote as follows:

> Hi Sherelle- I talked to you about a week and a half ago and you were going to find out exactly how much money I owed at this point.  I think I would just like to send in one payment.  You said you had to contact the legal end to find out what, if any, fees were owed and then you would get back with me.  The number you gave me at that time was $4,319.58.  Have you heard back from them yet?

*Id*. at 49.

It is unclear what contact the Goodells had with CMI from that point until December 9, 2011.  On that date, Ms. Keeling sent the Goodells the following email:

> Hello, I have attempted to contact you several times regarding the modification.  The modification has been approved, but the underwriter states she shows that you are self employed.  The underwriter is requesting the bwrs personal and business 2010 tax returns and a Profit and loss statement.  And corresponding business bank statements.

*Id*. at 51.  Melissa responded, "I will contact the accountant- for the business returns- you already have our personal tax returns.  I am still trying to come up with the past due amount.  You told me the foreclosure date is in January, is that still correct?"  *Id*. at 50.  Ms. Keeling wrote, "yes, the sale date is still 1/6/11 [sic], but you have been approved for the modification.  The underwriter is just asking for those last documents."  *Id*.  Melissa wrote back, "okay- I will try to get them to you next week.  Thanks Sherelle!"  *Id*.

Ten days later, Melissa wrote this email:

> Hi Sherelle- Just talked to them- they are supposed to be faxing me the info today and I will get it to you.  Also, is the house payment going to go up with the remodification- or would I be better off just paying the total amount due and keeping the payment at the same rate?  Thanks again for all your help.

*Id*. at 52.  Ms. Keeling responded,

hello, at this point I am unable to tell you if the modification would make your mortgage payment go up because I don't actually make those decisions. The underwriter who is working your file requested again your documents today, so we are waiting for your documents to continue the review to provide you with a decision. at this time I [sic] the sale date is 1/06/11 [sic], if you can bring the account completely current then I would advise you to do so, if not then please hurry and get those documents to me before the underwriter decided [sic] to close your file. thanks.

*Id*. Melissa wrote back that the documents "should be to you in about an hour." *Id*.

On December 21, 2011, Melissa wrote, "Hi Sherelle- I sent over the papers a couple of days ago- just making sure you got them. Thanks." *Id*. at 53. Ms. Keeling responded, "I just took a look at your account. I have not received any documents as of today." *Id*. The next morning, December 22, Melissa sent another email: "Here they are again." *Id*. In their complaint, the Goodells allege that they "also sent the document via electronic mail to Ms. Keeling on December 27, 29, and 30, 2011." Pls.' Compl. ¶ 44. There are no emails attached to the complaint substantiating the claim.

On January 3, 2012, Melissa wrote to Ms. Keeling, "Hi Sherelle- Hope you had a great holiday season! I haven't heard anything since I sent you the paperwork a couple weeks ago. Can you tell me what is happening? Thank you." Pls.' Compl. Ex. B, at 54. On January 5, Melissa wrote, "Hi Sherelle- You sent me an e-mail saying that I was approved for the remodification, that you just needed a couple more things. I sent the rest of the papers but I haven't heard anything from you since. Will you please let me know what is going on?" *Id*. at 56. On January 6, Melissa wrote, "Hi Sherelle- Still waiting to hear what is going on. Please let me know ASAP. Thanks." *Id*. at 59.

On January 9, 2012, Melissa wrote the following to Ms. Keeling:

Hi Sherelle- You told me that I was approved for the remodification and that you only needed a few more documents. I sent you those documents 4 times now, the first time being on December 21, 2011. Because I still have not heard from you, I

>am currently trying to get the payoff out of my 401k. If I don't hear from you by this time tomorrow, I will have no choice but to have my attorney contact CitiMortgage. Please let me know if the remodification went through, or how much money I need to pay Citi to be caught up. Thank you for your continued help.

*Id*. at 61–62. Melissa also wrote, "Sherelle- I can overnight $5,000.00 to you next week. Can I pay the $5,000.00 and have the remainder of what is due go on the remodification?" *Id*. at 61. Ms. Keeling finally responded:

>Hello, Yes I did inform you that you were approved for the modification back on 12/9/11, with the exception of us needing additional documents. We did not get those documents and unfortunately your sale date came on 1/6/11 [sic], so the home has sold. You are know [sic] in the redemption period. At this point we would not be able to accept anything but $74,341.10 to redeem the home.

*Id*.

In their complaint, the Goodells allege that CMI violated Michigan's Foreclosure of Mortgages by Advertisement Statute (FMA) (Mich. Comp. Laws § 600.3201 *et seq*.) by failing to engage in the statutory loan modification process (Counts I and II). The Goodells also claim that the foreclosure was improper based on alleged agreements that they entered into with CMI—an alleged repayment plan that was supposed to bring their loan current and two alleged promises to modify their loan. The Goodells seek to enforce those promises under several different theories: fraud/misrepresentation (Count III), promissory estoppel (Count V),[2] quiet title (Count VI), and intentional infliction of emotional distress (Count VII).

Although CMI did not file any dispositive motions, now pending is its motion *in limine* to exclude three categories of evidence from trial.

## II

Under the Federal Rules of Evidence, relevant evidence is admissible at trial unless the United States Constitution, a federal statute, the Rules of Evidence, or other rules prescribed by

---

[2] There is no Count IV contained in the Goodells' complaint.

- 6 -

the Supreme Court provide otherwise. Fed. R. Evid. 402. Irrelevant evidence is not admissible. *Id.* Evidence is "relevant" if it tends to make a material fact more or less probable. Fed. R. Evid. 401. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly provide for the exclusion of evidence before trial, "[i]n general, federal district courts have the power to exclude evidence *in limine* pursuant to their inherent authority to manage trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion *in limine* is to permit the Court to decide evidentiary issues in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial." *Corporate Commc'n Servs. of Dayton, LLC v. MCI Commc'n Servs., Inc.*, No. 3:08-CV-046, 2010 WL 1445169, at *1 (S.D. Ohio Apr. 12, 2010). A court will generally not grant a motion *in limine* unless the moving party "meets its burden of showing that the evidence in question is clearly inadmissible." *Id.* (citing *Indiana Ins. Co. v. Gen. Electric Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). "If such a showing is not made, evidentiary rulings should be deferred and resolved in the context of trial." *MCI Commc'n*, 2010 WL 1445169, at *1. Further, the denial of a motion *in limine* "is warranted where the moving party seeks to argue the merits of its case and preclude the non-moving party from presenting its case." *Lafrance v. Grand River Navigation Co., Inc.*, No. 08-13411, 2010 WL 3768328, at *2 (E.D. Mich. Sept. 21, 2010).

### III

CMI requests that three categories of evidence be precluded from the upcoming trial. First, CMI asserts that the Goodells should be prevented from offering evidence "regarding

alleged violations of the Michigan foreclosure by advertisement statute's loan modification process (M.C.L. 600.3205a and 600.3205b)[.]" Def.'s Mot. 1.  Next, CMI requests that the Goodells be precluded from introducing any evidence "regarding any alleged oral agreement that Plaintiffs claim to have entered with CMI[.]" *Id*.  Finally, CMI asks that the Goodells be foreclosed from offering evidence "regarding any damages[.]" *Id*.  Each will be discussed below.

**A**

CMI first argues that the Goodells should not be allowed to offer evidence regarding violations of the FMA's notice or loan modification process because "CMI was not required to provide the notice under M.C.L. 600.3205a or to engage in the negotiations required under M.C.L. 600.3205b." *Id*. at 4.  CMI is correct, and its motion will be granted on this issue.

The FMA establishes as follows:

> A party shall not commence proceedings under this chapter to foreclose a mortgage of property claimed as a principal residence exempt from tax under section 7cc of the general property tax act . . . if 1 or more of the following apply:
>
> > (a)  Notice has not been mailed to the mortgagor as required by section 3205a.
> >
> > \*       \*       \*
> >
> > (e)  The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents as required under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.

Mich. Comp. Laws § 600.3204(4).  Section 600.3205a establishes that "before commencing a proceeding under this chapter *to which section 3204(4) applies*, the foreclosing party shall serve a written notice on the borrower that contains all of the following information[.]" Mich. Comp. Laws § 600.3205a(1) (emphasis added).  Further, § 600.3205b indicates that "[i]f a borrower wishes to participate in negotiations . . . within 30 days after the notice under section 3205a is

mailed to the borrower, the borrower shall . . . ." Mich. Comp. Laws § 600.3205b. From these provisions, it is apparent that §§ 600.3205a and 600.3205b do not apply unless § 600.3204(4) is applicable. Moreover, § 600.3204(4) does not apply unless a property is claimed as a principal residence exempt from tax under section 7cc of the general property tax act.

The Goodells admit that they "did not claim the subject property as a principal residence exempt from tax under section 7cc of the general property tax act." Pls.' Resp. 6 (internal quotation marks and citations omitted), ECF No. 18. So while the Goodells offer to "stipulate and agree to not introduce evidence of" violations under § 600.3204(4), they go on to "oppose any restriction on their ability to introduce evidence of Defendant's violations of other applicable provisions of the [FMA]." *Id*.

A careful reading of CMI's motion *in limine* indicates that it only wishes to exclude any mention "regarding an alleged violation of M.C.L. 600.3205a or 600.3205b by (i) failing to provide the required notice, or (ii) failing to engage in the required negotiations[.]" Def.'s Mot. 4. CMI has not requested that evidence concerning the legality of its conduct under other provisions of the FMA be excluded. Thus, the Goodells' oppose something that has not been requested.

Further, because the Goodells did not claim the subject property as a principal residence exempt from tax under section 7cc of the general property tax act, § 600.3204(4) was not triggered, and §§ 600.3205a and 600.3205b do not apply. Thus, any evidence concerning CMI's compliance with those provisions is irrelevant. CMI's motion to exclude any such evidence will be granted.

**B**

The second category of evidence CMI does not want included in this trial are alleged promises between the parties. Specifically, the alleged agreement that if the Goodells "would pay three hundred dollars ($300.00) per week Plaintiffs would become current in [their] mortgage," and CMI's alleged agreements "to modify [the Goodells'] loan." Def.'s Mot. 4 (citations omitted). As to the first alleged agreement, CMI's argument is sound—this evidence is irrelevant and will be excluded from trial. Evidence concerning the second agreement, however, will not be excluded at this point.

> Michigan's statute of frauds related to financial institutions provides as follows:
>
> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2). CMI is a "financial institution" as used in this section. *See* § 566.132(3).

As the Michigan Court of Appeals recognized in *Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66 (Mich. Ct. App. 2000), the relevant statute of frauds provision "states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Id*. at 72. For any promise to have effect, noted in Michigan's statute of frauds and by the court in *Crown*, the promise or

commitment must be "*in writing and signed with an authorized signature* by the financial institution[.]" *Id*. at 71 (emphasis in original); *see also* Mich. Comp. Laws § 566.132(2).

Here, CMI wishes to exclude three specific communications between itself and the Goodells. As the Goodells establish in their response,

> Plaintiffs raised three promises in their claim of fraud and/or misrepresentation: (1) an oral representation that if Plaintiffs paid three hundred dollars ($300.00) per week, they would become current on their mortgage payments; (2) written representations made on October 11, 2011 that Defendant had approved Plaintiffs' [sic] for modification of their loan and could expect to receive the terms of the modification agreement in the mail; and (3) written representations made on December 9, 2011 that Plaintiffs had been approved for a loan modification and only needed to provide a set of documents to Defendant.

Pls.' Resp. 8.

**1**

Although noting the first communication was oral, the Goodells assert that CMI "has made no showing and has failed to argue that the representation or promises . . . falls within the three types of promises that the above statue of frauds covers." *Id*. But CMI did argue the oral promise is barred by the statute of frauds. After indicating the alleged promise "was not reduced to writing," CMI argues "that alleged agreement is not enforceable under the statute of frauds" and any mention "is irrelevant and should be excluded." Def.'s Mot. 8 (citation omitted).

Further, Michigan's statute of frauds establishes that an oral "promise or commitment to . . . make any other financial accommodation" is not enforceable. Mich. Comp. Laws § 566.132(2)(a). The Goodells' claim that the oral representation concerning $300 per week "is not covered by the above statute of frauds," Pls.' Resp. 8, is mistaken. The promise involved a financial accommodation concerning their mortgage loan.

Recognizing their tenuous footing, the Goodells argue that partial performance may save them. "Generally, partial performance can remove a claim from the statue of frauds." *Id*. at 9

(citing *Giordano v. Markovitz*, 531 N.W.2d 815, 816 (Mich. Ct. App. 1995)). But the Goodells note that "Michigan courts have not yet analyzed whether the doctrine of partial performance can remove a case from the requirements of MCL § 566.132(2)." Pls.' Resp. 9. They cite to one federal district court case for that proposition, but the case does not establish that a party's partial performance renders the requirements of § 566.132(2) inapplicable. Instead, the case indicates that "the statute of frauds may apply" even though the plaintiffs indicated they partially performed. *See Schuler v. Wells Fargo Home Mortg., Inc.*, No. 11-11501, 2011 WL 2470125, at *4 (E.D. Mich. June 20, 2011). Thus, the Goodells attempt to rely on their partial performance to exempt them from the statute of frauds is not supported by any legal authority.

Section 566.132(2) applies to the oral communication that $300 per week would bring the Goodells current on their loan, any claim to enforce the promise is thus barred, and any reference to the promise is irrelevant in the upcoming trial. Accordingly, the evidence will not be permitted.

**2**

Next, CMI attempts to preclude the Goodells from offering evidence concerning its alleged agreements to modify their loan. Def.'s Mot. 8. Although CMI considers any such agreements one category of evidence, the Goodells indicate that they "relied upon *two separate representations* made by [CMI]." Pls.' Resp. 9 (emphasis added). They then cite to Ms. Keeling's October 11, 2011 and December 9, 2011 emails indicating their loan modification had "been approved." *Id*. at 9–10 (citations omitted). Accordingly, the two alleged agreements will be discussed separately.

The first alleged agreement—contained in the October 11, 2011 email—is as follows: "The modification has been approved, but the underwriter states she shows that you are self

employed. The underwriter is requesting the bwrs personal and business 2010 tax returns and a Profit and loss statement. And corresponding business bank statements." Pls.' Compl. Ex. B, at 24.

CMI argues that "[a]lthough [the Goodells] were informed that they had been approved for a loan modification . . . the writing contained no material terms of the alleged agreement and is not, therefore, sufficient to form the basis of the contract." Def.'s Resp. 8 (citations omitted). CMI continues, "[b]ecause [the Goodells] fail to allege that the essential terms of the alleged loan modification were in a writing signed by CMI, any such agreement is unenforceable under the statute of frauds, and evidence of that alleged agreement should be excluded." *Id*.

But CMI misses the point. The Goodells are not attempting to enforce a contract, but promises that they relied upon. Indeed, the Goodells' promissory estoppel claim concerns an "equitable remedy" where a contract is implied by law. *See Aero Taxi-Rockford v. General Motors Corp.*, No. 259565, 2006 WL 1479915, at *10 (Mich. Ct. App. May 30, 2006) ("the jury . . . can only consider promissory estoppel if it fails to find the existence of an express contract"); *Indus. Maxifreight Servs., LLC v. Tenneco Auto. Operating Co., Inc.*, 182 F. Supp. 2d 630, 634 (W.D. Mich. 2002) ("Promissory estoppel is an equitable remedy"). Such a promise need only be "actual, clear and definite" for a contract to be implied. *Tenneco*, 182 F. Supp. 2d at 634. So the fact that the email did not contain the agreement's terms, and therefore does not constitute a contract, is irrelevant.

The promise or commitment contained in Ms. Keeling's October 11, 2011 email was actual, clear, and definite. It indicated that the Goodells' loan modification had "been approved[.]" Pls.' Compl. Ex. B, at 24. Although the email also requested documents, the Goodells have provided evidence that those materials were provided in a timely fashion. So

while it is true that the terms of a loan modification were never set forth, CMI made a definite and clear commitment to "modify" the Goodells' loan if they turned in the requested paperwork. The email is clearly in writing, and CMI does not contest the signature. Thus, CMI's alleged commitment or promise to modify the Goodells' loan was in writing and signed by CMI's agent. *See* Mich. Comp. Laws § 450.837(4) ("If a law requires a signature, an electronic signature satisfies the law."). The commitment or promise is not barred by the statute of frauds. Because the evidence is at least relevant to the Goodells' promissory estoppel claim (which does not require an express contract), the evidence will not be barred at this point.

The December 9, 2011 email contains the same language. *See* Pls.' Compl. Ex. B, at 50 ("you have been approved for the modification."). For the same reasons outlined above, evidence of this promise or commitment is not barred by the statute of frauds, it is at least relevant to the Goodells' promissory estoppel claim, and it will not be barred at this stage.[3]

### C

Finally, CMI seeks to prevent the Goodells from presenting any evidence of damages because they failed to provide " 'a computation of each category of damages claimed by the disclosing party' as required under Fed. R. Civ. P. 26(a)(1)(A)(iii)." Def.'s Mot. 8. CMI's motion will be granted as it applies to economic damages, but the Goodells will not be foreclosed from presenting evidence of non-economic damages at trial.

Federal Rule of Civil Procedure 26(a) establishes that a party is required to disclose "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26

---

[3] The Court wishes to emphasize that its findings concerning the existence of a promise or commitment are solely for determination of whether this evidence is admissible. This is *not* a finding as a matter of law, and the promise or commitment remains an element that must be proven to a jury.

also provides that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1). Notably, if a party does not disclose information that must be disclosed under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c); *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004). Further, unless non-disclosure was justified or harmless, "[t]he exclusion of non-disclosed evidence is automatic and mandatory." *Dickenson*, 388 F.3d at 983 (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)).

On September 10, 2012, the Goodells served their initial disclosures under Rule 26. Regarding damages, those disclosures indicated as follows:

> Plaintiffs will retain the services of an expert economist to project the economic damages Plaintiffs have suffered as a result of the improper foreclosure of their home by Defendant. Plaintiffs anticipate that the expert economist will rely upon Plaintiff's [sic] tax returns and any other documents establishing damages. Plaintiff [sic] will supply a copy of the expert economist report upon its completion. Additionally, Plaintiffs have made a claim for non-economic damages in the form of emotional distress, mental anguish, fright, shock, embarrassment, humiliation, depression, anxiety, nervousness, denial of social pleasures, and significant disruption of lifestyle. Plaintiff [sic] will rely on their testimony to establish the same and will rely on the sound judgment of the jury in its evaluation of Plaintiff's [sic] claim for damages.

Pls.' Rule 26 Disclosures 5, *attached as* Def.'s Mot. Ex. 4. It is clear that the Goodells were aware that their disclosures concerning economic damages were incomplete.

On February 8, 2013, CMI attempted to uncover more information about the Goodells' damages. On that date, CMI served the Goodells with Interrogatories, Requests for Production

of Documents, and Requests for Admission. *See* Def.'s Disc. Req., *attached as* Def.'s Mot. Ex. 5. Relevant here, Interrogatory number 11 requested the following information:

> With respect to any damages and/or other relief that you are seeking in this lawsuit:
>
> a.   State the total amount of damages sought by you;
>
> b.   Itemize, by count of the Complaint, the damages sought by you;
>
> c.   Explain in detail how such amounts were calculated;
>
> d.   Describe in detail any other relief that you are seeking; and
>
> e.   Identify all persons with knowledge of the alleged damages, and identify and produce all documents reflecting the alleged damages.

*Id.* at 7. The Goodells responded that they were "in the process of determining the economic effect Defendant's wrongful actions have caused them and cannot fully answer this Interrogatory at this time. However, Plaintiffs will supplement this Answer with such information." Pls.' Resp. Disc. Req. 5, *attached as* Def.'s Mot. Ex. 1. CMI alleges that although the Goodells were "required to supplement their initial disclosures throughout the discovery process . . . [t]hey failed to do so." Def.'s Mot. 9. The Goodells do not contest the point.

Instead, they argue that their disclosures regarding non-economic damages were appropriate and their failure to supplement the disclosures regarding economic damages was harmless. *See* Pls.' Resp. 12–14. The Court agrees as to the non-economic damages, but not the economic damages.

As the Goodells correctly point out, the "computation" required under Rule 26(a) "does not mean that plaintiffs must identify a specific sum to compensate them for injuries that are difficult to categorize, like anxiety or mental distress. The amount of computation that should be awarded for such an injury may appropriately be left to the jury." *Wolgast v. Richards*, No. 05-

10278, 2011 WL 3426187, at *4 (E.D. Mich. Aug. 5, 2011) (citation omitted). Regarding the Goodells' claims for non-economic damages (emotional distress, mental anguish, disruption of lifestyle, etc.), the Goodells appropriately indicated in their Rule 26 disclosures that they would rely on the jury to compute the appropriate award. There was no violation of the Goodells' Rule 26 obligation there. They can present evidence concerning non-economic damages at trial.

But the economic damages are not "difficult to categorize" in this case. In their complaint, the Goodells allege that "as a direct and proximate result of Defendant's unlawful actions, Plaintiff [sic] has suffered and continues to suffer severe economic damages, including *but not limited to* loss of their home, damage to their credit, and significant consequential expenses in relocating their family, if necessary." Pls.' Compl. ¶ 62 (emphasis added). In their Rule 26(a) disclosures, the Goodells established that they planned to engage an economic expert to calculate these economic losses, and would "supply a copy of the expert economist report upon its completion." Pls.' Rule 26 Disclosures 5. In their discovery responses, they indicated that they could not "fully answer" but that they would "supplement this Answer" at a later time. Pls.' Resp. Disc. Req. 5. They did not do either. No report was tendered, no supplemental information was provided (or, if there was, the Goodells do not deign to mention it in their responsive papers).

Instead, the Goodells argue that their failure to supplement is harmless because CMI "is well aware of the value of the home as Defendant had informed Plaintiff [sic] of the amount necessary to redeem the house." Pls.' Resp. 13. Even if this is rendered harmless the failure to supplement damage calculations related to the house (a proposition the Court does not accept), it would not relieve the Goodells from disclosing their intended recovery for damage to their credit, and any of the other losses that were not included in their complaint. Further, the amount

to redeem the house is not synonymous with the damages the Goodells have suffered because of the loss of the home. The fact that Plaintiffs have not provided this information at any point is not harmless. CMI has no idea the total amount of damages the Goodells plan to request, and thus it has no ability to assess its exposure before trial or defend against the accuation at trial.

The Goodells rely on *Clayman v. Starwood Hotels & Resorts Worldwide*, 343 F. Supp. 2d 1037 (D. Kan. 2004) and *Santos v. Farmers Ins. Exchange*, No. 07-11229, WL 2937778 (E.D. Mich. July 24, 2008) for the proposition that their failure to supplement was harmless. But neither case supports their argument. The court in *Clayman* determined that the plaintiff's "failure to compute damages was harmless as defendant knew what type of damages were being sought when served with the Complaint . . . *and defendant received a computation of damages through plaintiff's statement of damages in the Pretrial Order*." *Clayman*, 343 F. Supp. 2d at 1047 (emphasis added). The Goodells have provided no evidence that they ever provided any type of economic-damages computation to CMI.

*Santos* is similarly inapplicable. There, the court indicated that the plaintiffs' failure to put the defendant on notice of their claimed damages was harmless because, in part, "having participated in the arbitration proceeding with Plaintiffs in 2003 and reviewed their arbitration summary, Farmers has been adequately apprised of Plaintiffs' methods for calculating damages." *Santos*, No. 07-11229, WL 2937778, at *2. Again, in this case, the Goodells have never provided their method for calculating economic damages. Their failure under Rule 26 is not harmless, and any evidence of economic damages will not be allowed at trial. *See Dickenson*, 388 F.3d at 983 ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." (citation omitted)).

## IV

Accordingly, it is **ORDERED** that CMI's motion *in limine*, ECF No. 15, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that the following categories of evidence are **EXCLUDED** from trial: evidence that CMI violated sections 600.3205a and 600.3205b of the FMA, evidence that CMI indicated that $300 per month would bring the Goodells current on their loan, and any evidence concerning economic damages suffered.

It is further **ORDERED** that the following categories of evidence are **NOT EXCLUDED** at this point: CMI's promises or commitments to modify the Goodells' loan and evidence regarding the non-economic damages they have suffered.

Dated: July 10, 2013                                                s/Thomas L. Ludington
                                                                     THOMAS L. LUDINGTON
                                                                     United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 10, 2013.

                    s/Tracy A. Jacobs
                    TRACY A. JACOBS